motion for summary judgment is granted.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.

Julian P. STEEN

v.

The UNITED STATES.

No. 217-53.

United States Court of Claims.
June 5, 1956.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger & Harmel, Washington, D. C., were on the brief.

LeRoy Southmayd, Jr., Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff, a reserve officer, entered upon extended active duty on December 27, 1940, and served until May 24, 1947, when he was released not for physical disability, following the decision of a retiring board that he was not "permanently incapacitated for active service," and its recommendation that he be placed on "general service with a waiver."

Plaintiff claims he should have been retired for physical disability.

There is no evidence of arbitrary or capricious action. On the contrary, careful and impartial consideration was given plaintiff's claim, as will appear from the following:

About 4 years after the action of the retiring board, the Secretary of the Army authorized plaintiff to enter an Army hospital preliminary to appearing before a physical evaluation board, but with the reservation that the right of officers in an inactive status to do so under existing law was then being studied.

Plaintiff entered the hospital and later appeared before a physical evaluation board. This board found that plaintiff became unfit to perform the duties of his rank prior to the date of his release to inactive duty. However, before action by the Secretary of the Army on the recommendation of this board, the Comptroller General had ruled that officers in an inactive status were not entitled to apply for discharge for physical disability incurred while serving on active duty. For this reason no action was taken on the recommendation of the physical evaluation board.

A year and a half later plaintiff asked the Army Board for Correction of Military Records to correct his record so as to show that he was physically incapacitated when he was released to inactive duty. After a hearing, this board denied plaintiff's application, which was approved by the Secretary of the Army.

The Comptroller General's ruling that an officer in an inactive status was not entitled to appear before a physical evaluation board was erroneous, and refusal for this reason to approve the recommendation of the board was, therefore, erroneous. It is nonetheless the fact that its finding was not approved, and it takes the approval of the Secretary to consummate an officer's right to retirement benefits. Later, when the plaintiff appeared before the Army Board for Correction of Military Records, the action of that board denying his application was approved by the Secretary of the Army.

The case then boils down to this: The original action of the retiring board denying retirement for physical disability was approved by the Secretary and the subsequent action of the Army Board for Correction of Military Records denying his application for correction of his record to show physical disability was approved by him. Plaintiff, therefore, comes before us with no action by the Secretary approving his claim, and his approval is essential to perfect an officer's right to retired pay, in the absence of a showing of arbitrary or otherwise unlawful action. It was on a retiring board, and later on a physical evaluation board, and on the Secretary that jurisdiction was conferred to determine an officer's right to retired pay, and not on us. We have no jurisdiction to review or set aside their action if taken in good faith and in accordance with law.

This case differs from the case of Updike v. United States, 132 F.Supp. 957, 132 Ct.Cl. 627, in that in the Updike case the Secretary of the Army had approved the findings of the Retiring Board and Updike had been placed upon the disability retired list. This was a final adjudication of his rights. In that case we held that the Secretary of the Army did not have the right some time later on to set aside this ruling, and for this reason we gave Updike a judgment.

In the case at bar, the Secretary of the Army approved neither the finding of the Retiring Board nor the Physical Evaluation Board. It took his approval of the Physical Evaluation Board to complete plaintiff's right to retired pay. This ap-

948

proval was never given. When the matter finally came to the attention of the Secretary of the Army, when the action of the Army Board for Correction of Military Records was presented to him for action, he approved the action of that board refusing to correct plaintiff's records. Plaintiff's records showed that he was not permanently incapacitated for active service.

Hence, plaintiff has not obtained approval of the Secretary of the Army of the finding of the Physical Evaluation Board that he was physically incapacitated. On the contrary, the action of the Secretary of the Army amounts to a disapproval of its recommendation. Without the Secretary's approval of a finding that the plaintiff is incapacitated, he is not entitled to retired pay.

Plaintiff's petition must be dismissed. It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

MADDEN, Judge (dissenting).

I think that the plaintiff's situation is substantially the same as that of the plaintiff in Updike v. United States, 132 F.Supp. 957, 132 Ct.Cl. 627. Both were released from active duty "not by reason of physical disability." At the time of Updike's release in 1948, no investigation relating to disability was conducted. At the time of Steen's release in 1947, Steen was sent before a retiring board which found that he was not permanently incapacitated for active service, but was sufficiently incapacitated to warrant the recommendation that he be given "general service with a waiver," the equivalent, apparently of being placed on limited service. I suppose that in peacetime there is no place in the service for a reserve officer who is capable only of limited duty. At any rate, both Steen and Updike were discharged without retired pay.

In 1950 Updike was given an opportunity to appear before a Physical Evaluation Board, which seems to have been the equivalent, after the enactment of the Career Compensation Act of 1949, of a Retiring Board. The Physical Evaluation Board found that Updike was disabled, that he had become so disabled while serving on extended active duty. The Secretary of the Army approved the findings of the Physical Evaluation Board and placed Updike on the temporary disability retirement list. Steen, likewise, was given an opportunity to appear before a Physical Evaluation Board which found that he was disabled, and had become so on extended active duty.

On April 25, 1951, the Comptroller General issued a ruling to the effect that, once an officer had been separated from the service without a determination of disability, such a determination could not be later made, even though the determination found disability which existed at the time of discharge, though not diagnosed at that time.

The Physical Evaluation Board made its determination in Steen's case on April 17, 1951, eight days before the Comptroller General's ruling. At the time of that ruling, the Secretary had not yet approved the determination of the board, or granted Steen retirement. After the Comptroller General's ruling, the Secretary did not consider the merits of Steen's case. Instead, on July 16, 1951, he declared the proceedings of the Physical Evaluation Board "null and void," in view of the Comptroller General's ruling.

Returning now to Updike, who had been granted retirement by the Secretary before the Comptroller General's ruling, the Secretary, in view of that ruling, on August 1, 1951, canceled his prior order granting Updike retirement. In this case, again, he gave no consideration to the fact of disability. He acted only on the law, as the Comptroller General had construed it.

The ruling of the Comptroller General was erroneous. We held that it did not deprive Updike of his rights. It should not deprive Steen of his rights.

Both Updike and Steen, after being denied retired pay by the Secretary, filed applications with the Board for the Correction of Military Records for the correction of their records. Updike's application was denied on July 7, 1954. Steen's application was denied on August 7, 1954. Both denials were approved by the Secretary.

Updike wins. Steen loses. Steen loses because of the accident that his favorable decision from the Physical Evaluation Board came such a few days before the Secretary received the erroneous ruling of the Comptroller General that the Secretary had not, in the normal course of his work, approved it before he received the erroneous ruling and refused to consider the case on its merits at all.

The opinion of the court seeks to distinguish the Updike case on the ground of the original approval of his retirement by the Secretary, later revoked. I think we, in the Updike case, disregarded the Secretary's second and erroneous decision, and based our decision on the determination of the Physical Evaluation Board. I think we should, in this case, disregard the Secretary's erroneous refusal to decide, and base our decision on the determination of the Physical Evaluation Board.

The error which called for correction in this case was the error of law committed by the Secretary in treating the determination of the Physical Evaluation Board as a nullity, and refusing to consider it. The way to correct that error, after the error was recognized, was to pick up that determination and consider it on its merits. If that had been done, we have no reason to suppose that it would not have been approved, and retirement granted, since that determination had been made after ten days' examination and interrogation of the plaintiff in an Army hospital, and a full day's hearing by the Physical Evaluation Board itself, of the plaintiff in person.

The Board for the Correction of Records, on the other hand, acted upon recommendations of the Surgeon General and the Physical Review Council, which recommendations were unknown to the plaintiff at the time of his hearing before the Board and were not, of course, based upon any direct acquaintance of those officials with the plaintiff's condition.

The effect of the Secretary's failure ever to give consideration to the decision of the Physical Evaluation Board was to deprive the plaintiff of the chance and the probability of obtaining a favorable decision in the tribunal of first instance. Instead, he was projected into the appellate tribunal, the Board for the Correction of Records, with the burden of securing the reversal of an adverse decision which, of course, never should have been made. He was deprived of rights which all other officers, not the victims of the Comptroller General's error of law, were accorded. This court should award him retired pay.

LITTLETON, Judge, agrees with this dissent.

---

**REPUBLIC CHEMICAL CORPORATION**

v.

**The UNITED STATES.**

**No. 445-52.**

United States Court of Claims.
June 5, 1956.

